2007-NMCA-072

161 P.3d 894

**John L. JOHNSON, Worker–Appellant,**

v.

**HOYT & SON TREE SERVICE, and New Mexico Uninsured Employers Fund, Employer/Insurer–Appellee.**

**No. 26,661.**

Court of Appeals of New Mexico.

March 19, 2007.

Titus & Murphy Law Firm, Victor A. Titus, Farmington, NM, for Appellant.

Gary K. King, Attorney General, Santa Fe, NM, Richard J. Crollett, Special Assistant Attorney General, Albuquerque, NM, for Appellee.

## OPINION

WECHSLER, Judge.

{1} The opinion filed in this case on March 19, 2007 is hereby withdrawn and the following substituted therefor. The motion for rehearing is denied.

{2} We address in this appeal the right of the Uninsured Employer's Fund (the UEF) to change health care providers under NMSA 1978, § 52–1–49 (1990). We hold that the UEF does not have such a right and reverse the decision of the workers' compensation judge (the WCJ) to the contrary. We remand for further proceedings.

## BACKGROUND

{3} The underlying facts are not in dispute. Worker, John Johnson, suffered a work-related injury on December 9, 2003. He was taken to San Juan Regional Medical Center, from which he was transferred to University of New Mexico Hospital. He was ultimately transferred to Fort Bayard Hospital and later released. Worker's employer, Stanley Hoyt, d/b/a Hoyt and Son Tree Service (Employer), did not have workers' compensation insurance. The UEF completed a certificate of eligibility determination stating the UEF's obligation to pay Worker's claim for workers' compensation benefits to the extent the claim is compensable. After Worker filed his complaint against both Employer and the UEF, Worker and the UEF entered mediation that resulted in a recommended resolution. Worker and the UEF accepted the recommended resolution, but Employer rejected it. The recommended resolution was nevertheless approved because Employer's rejection was untimely. Under the recommended resolution, the UEF would pay Worker benefits, including reasonable and necessary medical care. The UEF did so.

{4} The dispute that gives rise to this appeal subsequently arose with regard to the choice of health care provider. Without objection, Worker served a notice of change of health care provider to Orthopedic Associates. The UEF thereafter served a notice of change to Dr. Fred Mosely. Worker objected. After a hearing, the WCJ issued an order overruling Worker's objection. The WCJ ruled that Employer did not initially direct medical care, and that the care Worker received from San Juan Regional Medical Center, University of New Mexico Hospital, and Fort Bayard Medical Center was either emergency care or Worker's choice of health care and a continuation thereof. The WCJ held that the UEF has the ability to "avail itself [of] the rights afforded" Employer and therefore, because it had not previously directed medical care, had the right to change the health care provider.

## AUTHORITY OF THE UEF UNDER SECTION 52-1-49

{5} Worker argues on appeal that Employer did not properly notify Worker of his right to select a health care provider initially and that, therefore, Employer was presumed to have selected the initial health care provider. See 11.4.4.11(C)(2)(b) NMAC ("If the decision of the Employer is not communicated in writing to the Worker, the Employer shall be presumed, absent other evidence, to have selected the HCP initially."). As a result, according to Worker, the UEF could not exercise a right that Employer did not have. To the extent that the UEF's rights might be viewed as derivative of the employers' rights in these types of cases, we agree with Worker that the UEF was not entitled to change the HCP under the circumstances of this case. See Howell v. Marto Elec., 2006–NMCA–154, ¶¶ 28, 32, 140 N.M. 737, 148 P.3d 823.

{6} However, the UEF contends that it has a right of its own to independently direct a worker's health care, and therefore our analysis must turn to the statutory authority of the UEF to do so. If the Workers' Compensation Act (the Act) does not provide the authority for the UEF to change a worker's health care provider without action by an employer, the UEF could not have so acted in this case, even if Employer had not initially selected the health care provider.

{7} The UEF contends that it has the authority to change a health care provider. According to the UEF, it is a separate party to the case with separate pecuniary interests as to a claim against it that grants it "all the separate rights and obligations afforded by law to a worker and employer in a traditional workers' compensation claim."

{8} We address the authority of the UEF as an issue of statutory construction of the Act subject to our de novo review. Grine v. Peabody Natural Res., 2006–NMSC–031, ¶ 17, 140 N.M. 30, 139 P.3d 190. In construing the Act, we look to it as an harmonious whole, reading each part in connection with all other parts. Lopez v. Employment Sec. Div., 111 N.M. 104, 105, 802 P.2d 9, 10 (1990).

{9} We first turn to the nature of the UEF. It is a statutory creation under the Act. NMSA 1978, § 52-1-9.1(A) (2004). Its corpus consists of fees paid by employers or insurance carriers. Section 52-1-9.1(B). It is placed with the state treasury and administered by the WCA. Section 52-1-9.1(A). The WCA may use the UEF to pay benefits to a worker if the worker's employer "has failed to maintain workers' compensation coverage because of fraud, misconduct or other failure to insure or otherwise make compensation payments." Section 52-1-9.1(C).

{10} As has occurred in this case, a worker may make a claim against the UEF if the worker's employer is uninsured. See § 52-1-9.1(C). Upon the filing of such a claim, the UEF becomes a party to the proceeding, as the UEF contends. We further agree with the UEF that, at least at that point, the UEF has separate pecuniary interests that it has the right to protect. However, our agreement with the UEF's position dissipates with its contention that to protect its interests it has all the rights of a worker and an employer afforded by law. The Act makes no such provision of authority.

{11} To be sure, the Act does contain provisions that protect the UEF with respect to claims. First, the Act grants the UEF the subrogation rights of the worker or the worker's dependents against the employer

failing to pay benefits, § 52–1–9.1(E), and subjects payments made by the UEF to subrogation and apportionment as if paid by a third party tortfeasor. Section 52–1–9.1(I). Second, after the UEF has paid benefits, the WCA director or a WCJ must order the employer to reimburse the UEF for all benefits paid and interest, costs, and attorney fees, and to pay a penalty to the UEF of fifteen to fifty percent of the value of the total award made with respect to the worker's claim. Section 52–1–9.1(G). These provisions are designed to secure the UEF's fiscal integrity when it is compelled to pay benefits on behalf of an uninsured employer.

■ {12} But the Act does not bestow upon the UEF the authority to act as either an employer or a worker with respect to the selection of a health care provider. The Act addresses that process in Section 52–1–49, which reads:

A. After an injury to a worker and subject to the requirements of the Workers' Compensation Act ... and continuing as long as medical or related treatment is reasonably necessary, the employer shall, subject to the provisions of this section, provide the worker in a timely manner reasonable and necessary health care services from a health care provider.

B. The employer shall initially either select the health care provider for the injured worker or permit the injured worker to make the selection. Subject to the provisions of this section, that selection shall be in effect during the first sixty days from the date the worker receives treatment from the initially selected health care provider.

C. After the expiration of the initial sixty-day period set forth in Subsection B of this section, the party who did not make the initial selection may select a health care provider of his choice. Unless the worker and employer otherwise agree, the party seeking such a change shall file a notice of the name and address of his choice of health care provider with the other party at least ten days before treatment from that health care provider begins. The director shall adopt rules and regulations governing forms, which em-

ployers shall post in conspicuous places, to enable this notice to be promptly and efficiently provided. This notice may be filed on or after the fiftieth day of the sixty-day period set forth in Subsection B of this section.

D. If a party objects to the choice of health care provider made pursuant to Subsection C of this section, then he shall file an objection to that choice pursuant to Subsection E of this section with a workers' compensation judge within three days from receiving the notice. He shall also provide notice of that objection to the other party. If the employer does not file his objection within the three-day period, then he shall be liable for the cost of treatment provided by the worker's health care provider until the employer does file his objection and the workers' compensation judge has rendered his decision as set forth in Subsection F of this section. If the worker does not file his objection within the three-day period, then the employer shall only be liable for the cost of treatment from the health care provider selected by the employer, subject to the provisions of Subsections E, F and G of this section. Nothing in this section shall remove the employer's obligation to provide reasonable and necessary health care services to the worker so long as the worker complies with the provisions of this section.

E. If the worker or employer disagrees with the choice of the health care provider of the other party at any time, including the initial sixty-day period, and they cannot otherwise agree, then he shall submit a request for a change of health care provider to a workers' compensation judge. The director shall adopt rules and regulations governing forms, which employers shall post in conspicuous places, to submit to a workers' compensation judge a request for change of a health care provider.

F. The request shall state the reasons for the request and may state the applicant's choice for a different health care provider. The applicant shall bear the burden of proving to the workers' compensation judge that the care being received is not reasonable. The workers' compensa-

tion judge shall render his decision within seven days from the date the request was submitted. If the workers' compensation judge grants the request, he shall designate either the applicant's choice of health care provider or a different health care provider.

G. If the worker continues to receive treatment or services from a health care provider rejected by the employer and not in compliance with the workers' compensation judge's ruling, then the employer is not required to pay for any of the additional treatment or services provided to that worker by that health care provider.

H. In all cases where the injury is such as to permit the use of artificial members, including teeth and eyes, the employer shall pay for the artificial members.

{13} We observe the use of the statutory language. Although the statute uses the terms "employer" and "worker" in allocating rights, it sometimes grants rights to "the party" or "the other party." Specifically, in Subsection C in granting the authority to change a health care provider after the initial selection, the statute gives the right to "the party who did not make the initial selection." Section 52–1–49(C). The UEF takes the position that the term "party" is used in Section 52–1–49 in its general sense as "[a] person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually." *Black's Law Dictionary* 1278 (4th ed.1951). It notes that the Worker's Compensation Administration rules treat the UEF's claim administrator as a party in the mediation and adjudication of disputes before the WCA. 11.4.12.9(A)(1) NMAC.

{14} However, a plain reading of Section 52–1–49 belies the UEF's position. Subsection B specifically addresses only the responsibilities of an employer and a worker with respect to the selection of an initial health care provider. Subsection C uses the term "party" in order to refer to Subsection B. It does so to refer to either the employer or the worker who did not make the initial health care provider selection under Subsection B. Without the use of the term to refer to either party, the language of Subsection C would be cumbersome. In addition, Subsection C also names the worker and the employer as the parties who can agree about notice of a change of health care provider. No other possible party is mentioned. Subsection D follows the same methodology. In allowing a "party" to object to a change in health care provider within three days of notice of a change, it imposes consequences for exceeding the time period only upon an employer or a worker. The plain meaning of Section 52–1–49 demonstrates that the use of the term "party" within the statute refers only to an employer or a worker and not to another interested party. *See Smith v. Ariz. Pub. Serv. Co.*, 2003–NMCA–097, ¶ 5, 134 N.M. 202, 75 P.3d 418 ("We look first to the plain meaning of the statute's words, and we construe the provisions of the Act together to produce a harmonious whole.").

{15} Although the UEF acknowledges that Section 52–1–49, as well as WCA regulations concerning the selection of a health care provider, do not address selections by the UEF, it nevertheless argues that Section 52–1–49 and the regulations should be read to give the UEF this authority. The UEF's reasoning is that the legislature did not foresee the circumstances of this case and would not have intended to burden the UEF with the responsibility of an employer to ensure that a worker receives timely reasonable and necessary medical care and benefits without the same protection available to an employer to select or change a health care provider.

{16} We consider this reasoning faulty for three reasons. First, we presume that the legislature knows the law when enacting legislation. *State v. Torres,* 2006–NMCA–106, ¶ 9, 9, 140 N.M. 230, 141 P.3d 1284. If the legislature had intended to give the UEF authority with regard to health care providers, it could have done so. *See Gallegos v. State Bd. of Educ.,* 1997–NMCA–040, ¶ 17, 123 N.M. 362, 940 P.2d 468. Second, even though the UEF may have the same responsibility of an employer to pay benefits, its position is not the same as an employer that has a potentially ongoing relationship with the worker. Third, as we have discussed, other provisions of the Act protect the interests of the UEF. Thus, when we

view the Act as a whole, the Act does not grant the UEF the authority to select or change a health care provider under Section 52–1–49.

## CONCLUSION

{17} We reverse the WCJ's order overruling Worker's objection to the UEF's notice to change health care provider and remand to the WCA for further proceedings.

{18} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and MICHAEL D. BUSTAMANTE, Judges.